UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:23-cv-24891-BECERRA

TOP TRACKING SYSTEM LLC,

    Plaintiff,

v.

MARIA V. CASTELLANOS,
CARLOS A. HERRERA,
KARLA HERRERA,
LOGIT, LLC, KVC ESTATES IV, LLC,
and PATRIOT ELD, LLC,

    Defendants.
_____/

## REPORT AND RECOMMENDATIONS

**THIS CAUSE** is before the Court upon Plaintiff Top Tracking System LLC's Motion for Preliminary Injunction.[1] (ECF No. 20). Defendants Maria V. Castellanos, Carlos A. Herrera, Karla Herrera, Logit, LLC, and KVC Estates IV, LLC filed a Response (ECF No. 52), to which Plaintiff filed a Reply (ECF No. 57). The matter has been referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, for a report and recommendation.[2] (ECF No. 27). Following an evidentiary hearing, the Parties submitted supplemental briefing on the issue of governance of the limited liability company at issue. (ECF Nos. 60, 64, 66). Having considered the Motion, Response, Reply, evidence and argument

---

[1] Plaintiff sought an expedited ruling on or before February 1, 2024, pursuant to Southern District of Florida Local Rule 7.1(d), based on Defendants' control over Plaintiff's Quickbooks account, the system used to manage customer accounts. However, the Reply notes that Plaintiff regained control over its Quickbooks account on February 1, 2024. The Motion has been considered in the ordinary course.

[2] This case is now assigned to the calendar of the Honorable Jacqueline Becerra, United States District Judge.

1

advanced at the hearing, the Parties' supplemental briefing, (ECF Nos. 64, 66), the record, and being otherwise fully advised in the premises, the undersigned respectfully **RECOMMENDS** that the Motion be **DENIED**.

I.     **BACKGROUND**

This is an action pertaining to control of Top Tracking Systems LLC ("Top Tracking") and its intellectual property. Plaintiff Top Tracking Systems LLC initiated this action against Defendants Maria V. Castellanos ("Castellanos"), Carlos H. Herrera ("Herrera"), Karla Herrera ("Karla"), Logit, LLC, and KVC Estates IV LLC in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, on November 20, 2023. (ECF No. 1). The case was removed to this Court on December 26, 2023, based on federal question jurisdiction pursuant to 28 U.S.C. § 1331.

The Verified Complaint filed in state court alleges that Top Tracking Systems LLC is a manager-managed LLC whose membership consists of five individuals each owning a 20% interest: Pedro Figueredo Lopez ("Figueredo"), Defendants Castellanos and Herrera, and non-parties Alejandro Rubinos ("Rubinos") and Luis A. Ravelo ("Ravelo"). In broad strokes, the Verified Complaint asserts that Castellanos and Herrera, when they were managers of Top Tracking Systems LLC, misappropriated $400,000.00 in funds from the company. When the other members—Figueredo, Rubinos, and Ravelo—discovered the misappropriation, those members executed a written consent removing Castellanos and Herrera as managers of Top Tracking and appointing Figueredo as Top Tracking's sole manager. Castellanos and Herrera were terminated from their employment at Top Tracking and their removal as managers was recorded with the Florida Division of Corporations.

The Verified Complaint asserts that, nonetheless, Castellanos and Herrera have continued to act on behalf of Top Tracking and have: (i) refused to let Figueredo enter Top Tracking's offices; (ii) refused to turn over Top Tracking's inventory; (iii) caused the filing of a trademark application for "TOP TRACKING SYSTEM" through Defendant KVC Estates IV, LLC; (iv) contacted Top Tracking's customers, contractors, and vendors and falsely claimed that Top Tracking is shut down; (v) directed Top Tracking's customers to Logit; (vi) refused to turn over Top Tracking's property and credentials to bank accounts; (vii) transferred contracts to Logit; and (viii) removed or disabled Top Tracking's website.

Accordingly, Top Tracking asserted the following claims in the Verified Complaint: breach of fiduciary duty against Castellanos and Herrera, under Florida law ("Count 1"); tortious interference with business relationships against all Defendants, under Florida law ("Count 2"); a claim seeking entry of a temporary and a permanent injunction ("Count 3"); conversion against Castellanos and Herrera, brought in the alternative to Counts 1 and 2, under Florida law ("Count 4"); unjust enrichment against Castellanos and Herrera, brought in the alternative to Counts 1 and 2, under Florida law ("Count 5"); trademark infringement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), against Castellanos, Herrera, and KVC Estates IV, LLC ("Count 6"); unfair competition against Castellanos, Herrera, and KVC Estates IV, LLC, brought in the alternative to Count 5, under Florida law ("Count 7"); and violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") against Castellanos, Herrera, and KVC Estates IV, LLC ("Count 8").[3]

---

[3] On February 7, 2024, Plaintiff filed a First Amended Verified Complaint (ECF No. 41), which adds the following claims: a request for judgment declaring the validity of the written consent and identifying the current managers of Plaintiff; a request for a judgment declaring the owner of the "TOP TRACKING SYSTEM" trademark as of July 25, 2023, and the current owner of the mark; and a judgment for damages for based on transactions in which Castellanos and Herrera had a conflict of interest. Plaintiff also added Patriot ELD, LLC ("Patriot") as a Defendant.

Plaintiff now moves to preliminarily enjoin Defendants from, among other things: holding themselves out as managers of Top Tracking; withholding access to Top Tracking's property and accounts; using Top Tracking property; contacting or communicating with Top Tracking customers, vendors, employees, or contractors; making disparaging remarks about Top Tracking and Figueredo; use and cease infringement of Top Tracking's marks.  Plaintiff also seeks an Order requiring Defendants to return Top Tracking property and funds removed on or after November 1, 2023.  A hearing on the Motion was held on February 13, 2024, where the Court heard evidence and argument from both sides.  At the hearing, the Parties' exhibits were admitted into evidence[4] and the Court heard testimony from Figueredo, Renato C. Ribeiro, Julio Pino, Jeffrey Giordano, and Herrera.

> (1) Figueredo testified that Top Tracking provides electronic logbook software tracking, security cameras, and temperature sensors for refrigerated trailers to trucking clients.  He testified to the corporate structure of Top Tracking Systems LLC.  There was no written operating agreement at the time the articles of incorporation were filed.  Rubinos and Ravelo have been members of Top Tracking since 2018 and have not dissociated from the LLC.  Figueredo testified that he became the sole manager of Top Tracking upon the consent of the majority of the LLC's members pursuant to the November 1, 2023 written consent removing Castellanos and Herrera as managers.  Though he testified on cross-examination that, leading up to the signing of the written consent, he had not been in contact with Rubinos and Ravelo for years and they were not actively involved in the operation of the company.  Notwithstanding, he asserted that, now, Rubinos helps with programming and Ravelo assists with social media;

---

[4] The exhibits admitted into evidence at the hearing were Plaintiff's Exhibits V, II, O, B, H, VV, D, Y, J, I, JJ.1, LL, L, CC, and BB.  *See* (ECF Nos. 60, 78).

4

neither is paid a salary for this work. Figueredo further testified that the next day, on November 2, 2023, Castellanos and Herrera filed an application to trademark the Top Tracking System mark at issue here. He further averred that Castellanos and Herrera refused to provide him with the access codes for Top Tracking's accounts when they were removed as managers. Billboards that advertise Top Tracking in both Houston, Texas, and Miami, Florida, display a phone number that is instead connected to a company opened by Castellanos and Herrera in the name of their daughter, Karla. Access to Top Tracking's email address has not been turned over so clients' emails are going unanswered. Castellanos and Herrera have also maintained possession of Top Tracking's physical business address, website, and social media accounts and have not permitted Figueredo access. Figueredo further testified that Castellanos and Herrera had filed documents with the Florida Department of Corporations in January 2024 that had removed Figueredo's association with Top Tracking and listed themselves as managers.

(2) Renato C. Ribeiro is a vendor who has provided vehicle wraps to Top Tracking for advertising. He testified that he had wrapped a few of Top Tracking's vans in the past. Ribeiro stated that he is familiar with Rubinos, Ravelo, and Castellanos. He provided invoices for the work he performed. On cross-examination, he testified that Herrera's picture would appear on the advertising created for Top Tracking.

(3) Julio Pino is a private investigator. He testified that he visited Top Tracking's old address. He saw no Top Tracking signage; rather the location had a logo for Patriot displayed. When he inquired, Pino was told that Top Tracking was no longer in

business at the former address, as the owners had separated and they offered similar services.

(4) Jeffrey Giordano, another private investigator, testified that he too was investigating trademark infringement. His testimony largely corroborated Ribeiro's testimony.

(5) Carlos Herrera testified that he applied for a trademark of Top Tracking Systems through KVC Estates IV, LLC. He controls a phone number with a Miami telephone area code associated with Top Tracking System LLC, which is displayed on two billboards. Herrera testified that Figueredo has control of Top Tracking's website. He testified that Figueredo orchestrated taking control of Top Tracking. Herrera's testimony was difficult to credit as he became angered by the questions he was asked and had to be warned to comport himself or he would be excused. He testified that he believed he is the owner of the Top Tracking marks because he created the mark and hired a company to create the logo. However, there was no written agreement between him and Top Tracking regarding ownership of the mark. Herrera testified that KVC Estates IV, LLC owns the mark, that entity was created "a long time ago," and that entity applied to register the mark. When asked why he needed Figueredo's assistance to register the trademark that he says he owns, Herrera replied that he had given Figueredo all the responsibility for technology as he had hired Figueredo in 2007 for IT work.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 65(a) authorizes a district court to enter a preliminary injunction. Fed. R. Civ. P. 65(a). To prevail on a motion for a preliminary injunction, a plaintiff must establish: "(1) substantial likelihood of success on the merits; (2) irreparable injury will be

suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998). The Eleventh Circuit has recognized that the first factor—a substantial likelihood of success on the merits—is "generally the most important" of the four factors. *Gonzalez v. Governor of Georgia*, 978 F.3d 1266, 1271 n.12 (11th Cir. 2020) (quoting *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1232 (11th Cir. 2005)). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *ACLU of Fla. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009) (quotation omitted). Failure to show any of the four factors is "fatal" to the preliminary injunction inquiry. *Id.*

### III.     DISCUSSION

Plaintiff argues in its Motion that it is substantially likely to succeed on the merits of various claims, that it will be irreparably injured without a preliminary injunction, that the balance of the harms weighs in favor of a preliminary injunction, and the public interest will be served by an injunction. Specifically, Plaintiff asserts that it is substantially likely to succeed on its request for a judgment declaring the validity of the written consent and identifying the current managers of Plaintiff, advanced as Count 1 of the First Amended Verified Complaint; Plaintiff's trademark and related claims seeking declaratory judgment; the tortious interference claim; and Plaintiff's unfair Competition and FDUTPA claims.

Each of the claims on which Plaintiff's motion depends requires proof of control of the Plaintiff entity and ownership of the trademark. For Plaintiff's claim for false designation under

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a),[5] Plaintiff must prove that Defendants used in commerce, in connection with any goods or services, any word, term, name, symbol or device, or any combination thereof, or any false designation of origin that is likely to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval, of Defendants' goods by Plaintiff. *See* 15 U.S.C. § 1125(a)(1). The test for liability for false designation of origin under 15 U.S.C. § 1125(a) is the same as for a trademark counterfeiting and infringement claim, *i.e.*, whether the public is likely to be deceived or confused by the similarity of the marks at issue. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992) (Stevens, J., concurring); *Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1289 (S.D. Fla. 2016). The same test applies to Plaintiff's trademark claims arising under Florida law. *besumart.com*, 240 F. Supp. 3d at 1289 ("Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under the common law of Florida."); *id.* (citing *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1218 (S.D. Fla. 2004)) ("The analysis of liability for Florida common law trademark infringement is the same as under the Lanham Act[.]"). To establish these claims, plaintiff must demonstrate "(1) that it owns a valid mark with priority, and (2) that the defendant's mark is likely to cause consumer confusion with the plaintiff's mark." *FCOA LLC v. Foremost Title & Escrow Servs. LLC*, 57 F.4th 939, 946 (11th Cir.), *cert. denied*, 144 S. Ct. 103 (2023) (citing *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999)). Plaintiff's claim for tortious interference requires proof of a business relationship under which it has legal rights, which defendants intentionally interfered with, damaging plaintiff. *Symon v. J. Rolfe Davis, Inc.*, 245 So. 2d 278, 280 (Fla. 4th DCA 1971).

---

[5] The claim was titled as a trademark infringement claim.

Plaintiff's unfair competition and FDUTPA claims are, as acknowledged in the Motion, essentially duplicative of the trademark infringement claim. (ECF No. 20 at 13) ("The common basis for these claims is that Plaintiff has been using the Mark in commerce since 2016 and Patriot's deceptive practices advertising itself as Top Tracking by using Top Tracking's historic phone number and operating out of its prior office space that is advertised as Top Tracking.").

The Court agrees with Defendants' argument advanced at the hearing that neither side can show likelihood of success at this posture. The Court thus finds that Plaintiff has not, at this posture, established a substantial likelihood of success on its claims.[6] Breach of fiduciary duty underpins each of the claims supporting Plaintiff's request for a preliminary injunction here, but Plaintiff has not moved for a preliminary injunction on its claim for breach of fiduciary duty. Notwithstanding, the Court has not been armed with credible testimony from either side from which to make findings regarding ownership of the mark at issue in Plaintiff's trademark claims.

Nor did the testimony from either side, at this posture, credibly establish the veracity of the documents underpinning the claims relating to the management structure of Top Tracking LLC. Plaintiff's representative offered explanations for the existence or absence of operating agreements that were, in a word, suspicious. Documents were advanced in evidence that the undersigned has serious doubts are authentic; allegations of fraud surrounding their creation and execution were raised and not well resolved. For his part, Defendant Herrera denied any relationship to the alleged infringing company Patriot, against the obvious weight of the evidence. Simply put, there was a lack of credible evidence presented to enable the Court to find for Plaintiff as to the claims

---

[6] In finding that Plaintiff has not satisfied the high burden on the substantial likelihood of success prong, Plaintiff is not entitled to a preliminary injunction and the Court need not address the remaining prongs. *See ACLU of Fla. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009) ("'A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites.' Failure to show any of the four factors is fatal, and the most common failure is not showing a substantial likelihood of success on the merits." (citation omitted)).

underpinning the request for injunctive relief, and thus Plaintiff as movant has failed to meet its high burden, at this posture and on this Motion, of establishing that it is substantially likely to succeed.

## IV.   RECOMMENDATIONS

Based on the foregoing, the undersigned respectfully **RECOMMENDS** that Plaintiff Top Tracking System LLC's Expedited Motion for Preliminary Injunction (ECF No. 20) should be **DENIED**.

A party shall serve and file written objections, if any, to this Report and Recommendations with the Honorable Jacqueline Becerra, United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendations. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, this 29th day of July, 2024.

                                                                LAUREN F. LOUIS
                                                                UNITED STATES MAGISTRATE JUDGE

Copies to:
Honorable Jacqueline Becerra
Counsel of record