UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:23-cv-24891-BECERRA

TOP TRACKING SYSTEM, LLC,

    Plaintiff,

v.

MARIA V. CASTELLANOS,
CARLOS A. HERRERA,
KARLA HERRERA,
LOGIT, LLC, KVC ESTATES IV, LLC,
and PATRIOT ELD, LLC,

    Defendants.

_____/

## REPORT AND RECOMMENDATIONS

**THIS CAUSE** is before the Court upon Plaintiff's Motion to Dismiss Defendants' Verified Counterclaim. (ECF No. 65). Defendants filed a Response in Opposition (ECF No. 79), to which Plaintiff filed a Reply (ECF No. 81). This matter has been referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, for a report and recommendation. (ECF No. 86). Having considered the Motion, Response, and Reply, and being otherwise fully advised in the premises, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion be **GRANTED.**

**I.    BACKGROUND**

This is an action pertaining to control of Top Tracking Systems LLC ("Top Tracking") and its intellectual property. Plaintiff Top Tracking Systems LLC initiated this action against Defendants

1

Maria V. Castellanos ("Castellanos), Carlos H. Herrera ("Herrera"), Karla Herrera ("Karla"), Logit, LLC, and KVC Estates IV, LLC in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, on November 20, 2023. (ECF No. 1). The case was removed to this Court on December 26, 2023, based on federal question jurisdiction pursuant to 28 U.S.C. § 1331.

The Verified Complaint filed in state court alleges that Top Tracking is a manager-managed LLC whose membership consists of five individuals each owning a 20 percent interest: Pedro Figueredo Lopez ("Figueredo"), Defendants Castellano and Herrera, and non-parties Alejandro Rubinos ("Rubinos") and Luis A. Ravelo ("Ravelo"). In broad strokes, the Verified Complaint asserts that Castellanos and Herrera, as managers of Top Tracking, misappropriated $400,000.00 in funds from the company. When the other members—Figueredo, Rubinos, and Ravelo—discovered the misappropriation, those members executed a written consent removing Castellanos and Herrera as managers of Top Tracking and appointing Figueredo as Top Tracking's sole manager. Castellanos and Herrera were terminated from their employment at Top Tracking and their removal as managers was recorded with the Florida Division of Corporations.

The Verified Complaint asserts that, nonetheless, Castellanos and Herrera have continued to act on behalf of Top Tracking and have: (i) refused to let Figueredo enter Top Tracking's offices; (ii) refused to turn over Top Tracking's inventory; (iii) caused the filing of a trademark application for "TOP TRACKING SYSTEM" through Defendant KVC Estates IV, LLC; (iv) contacted Top Tracking's customers, contractors, and vendors and falsely claimed that Top Tracking is shut down; (v) directed Top Tracking's customers to Logit; (vi) refused to turn over Top Tracking's property and credentials to bank accounts; (vii) transferred contracts to Logit; and (viii) removed or disabled Top Tracking's website.

Accordingly, Top Tracking asserted the following claims in the Verified Complaint: breach of fiduciary duty against Castellanos and Herrera, under Florida law ("Count 1"); tortious interference with business relationships against all Defendants, under Florida law ("Count 2"); a claim seeking entry of a temporary and a permanent injunction ("Count 3"); conversion against Castellanos and Herrera, brought in the alternative to Counts 1 and 2, under Florida law ("Count 4"); unjust enrichment against Castellanos and Herrera, brought in the alternative to Counts 1 and 2, under Florida law ("Count 5"); trademark infringement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), against Castellanos, Herrera, and KVC Estates IV, LLC ("Count 6"); unfair competition against Castellanos, Herrera, and KVC Estates IV, LLC, brought in the alternative to Count 5, under Florida law ("Count 7"); and violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA") against Castellanos, Herrera, and KVC Estates IV, LLC ("Count 8").

Defendants filed an answer and asserted a counterclaim against Top Tracking. *See* (ECF No. 9). Defendants seek judicial dissolution under Fla. Stat. § 605.0702 on the grounds of misappropriation and/or waste of Top Tracking's assets and, alternatively, on the grounds of deadlock in the management of Top Tracking's activities. In support thereof, Defendants allege that Figueredo, Rubinos, and Ravelo have: (i) usurped control of Top Tracking's financial and social media accounts; (ii) engaged in infringing activities to the detriment of Top Tracking; (iii) diverted company revenue to an unauthorized account; (iv) excluded Defendants from accessing Top Tracking's financial accounts and information; and (v) wasted and misappropriated Top Tracking's assets for their own personal benefit.

Plaintiff now moves to dismiss Defendants' Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 65).

3

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." A defending party may move to dismiss under Federal Rule of Civil Procedure 12(b)(6) when the pleader fails to state a claim upon which relief can be granted.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although detailed factual allegations need not be provided, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted).

In deciding a motion to dismiss, "[a] court may consider only the complaint itself and any documents referred to in the complaint which are central to the claims." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). "[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). The facts alleged are to be taken as true and all reasonable inferences are to be drawn in claimant's favor. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012).

### III.  DISCUSSION

Defendants seek judicial dissolution under the Florida Revised Limited Liability Company Act, Fla. Stat. § 605.0701 *et seq*.  Defendants advance two bases for dissolution: (1) misappropriation or waste of Top Tracking's assets; and (2) deadlock among Top Tracking's members.

To plausibly state a claim for dissolution on the first basis, Defendants must establish that the waste or misappropriation of Top Tracking's assets is causing injury to either Top Tracking itself or to one or more of the company's members.  *See* Fla. Stat. § 605.0702(1)(b)(4).

Alternatively, Defendants must establish that Top Tracking's members are deadlocked in the management of its activities and affairs, that the members are unable to break the deadlock, and that irreparable injury to Top Tracking is threatened or being suffered.  Fla. Stat. § 605.0702(1)(b)(5). Deadlock is defined as "a state of inaction or of neutralization caused by the opposition of persons or factions (as in a government or voting body.)."  *Kertesz v. Spa Floral, LLC*, 994 So. 2d 473, 475 & n.2 (Fla. 3d DCA 2008).  In other words, in order to state a claim for dissolution on the basis of deadlock, Defendants must allege that Top Tracking is no longer operating.

Defendants argue that the waste of Top Tracking's assets is evidenced by the usurpation of Top Tracking's financial and social media accounts, Defendants' exclusion from Top Tracking's financial accounts, and the diversion of funds due to Top Tracking to an unauthorized bank account which Figueredo is using for his personal gain.  Defendants argue that they have been "locked out" of Top Tracking's management and financial accounts, and that this amounts to a deadlock in the company's management.

Plaintiff argues that, because Top Tracking continues to operate, there can be no deadlock. Plaintiff further argues that diversion of Top Tracking's funds to a different bank account does not establish that Top Tracking's assets are being wasted or misappropriated.

A. **Dissolution on the Grounds of Waste or Misappropriation of Assets**

A court may dissolve a limited liability company in a proceeding by a manager or member of the company if it is established that "[t]he limited liability company's assets are being misappropriated or wasted, causing injury to the limited liability company, or in a proceeding by a member, causing injury to one or more of its members." Fla. Stat. § 605.0702(1)(b)(4).

Defendants' key contention with respect to waste is that funds are being diverted into an "unauthorized bank account" opened by Figueredo. (ECF No. 9 at ¶ 23). Defendants allege that "Figueredo contacted Heartland Payment Processing and deceived them into linking the company's merchant account with the unauthorized bank account. This resulted in a direct circumvention of the established payment processing structure, leading to the unauthorized diversion, control and receipt of [Top Tracking's] revenue stream to the unauthorized bank account." (*Id*.). Defendants allege that "[b]y diverting these payment to himself through unauthorized means, Figueredo, Ravelo and Rubinos have engaged in the misappropriation of [Top Tracking's] funds for personal gain . . .". (*Id*. at ¶ 24). Defendants argue that these facts support a reasonable inference that Top Tracking's assets have been misappropriated. (ECF No. 79 at 4).

Plaintiff argues that the allegation that Figueredo is personally receiving money from the new bank account in Top Tracking's name is not tantamount to waste of company assets, and that Figueredo, as Top Tracking's sole manager, could easily be receiving compensation or reimbursements through the account. (ECF No. 81 at 4).

The undersigned agrees. Defendants' allegation that Top Tracking's funds are being diverted to an unauthorized bank account falls short of alleging that the company's assets have been misappropriated. Defendants' allegation that Figueredo, Ravelo, and Rubinos have misappropriated Top Tracking's funds for personal gain is conclusory and lacks factual support. *Compare Happy Tax*

6

*Franchising, LLC v. Hill*, No. 19-24539-CIV, 2021 WL 3811041, at *5 (S.D. Fla. June 7, 2021) (finding that plaintiff adequately alleged a defamation claim when it identified "what was said, the specific Defendant who made the statement, to whom the statement was made, and when it was said."), *report and recommendation adopted sub nom. Happy Tax Franchising, LLC v. JL Hill Grp.*, LLC, No. 19-24539-CIV, 2021 WL 3793050 (S.D. Fla. Aug. 26, 2021), *with Crayton v. Opa-Locka Police Department*, No. 1:22-cv-23110, 2023 WL 3353927, at *3 (S.D. Fla. April 22, 2023) (recommending that the motion to dismiss be granted when plaintiff stated that he was beaten, tasered, and hog tied but did not provide sufficient factual matter to demonstrate that he was entitled to relief on his claim for false arrest), *report and recommendation adopted*, No. 1:22-CV-23110-KMM, 2023 WL 3341629 (S.D. Fla. May 10, 2023).  Moreover, Defendants do not particularly allege how this diversion of funds caused injury; they merely conclude that "as a result of these wrongful actions, [Defendants] and [Top Tracking] are suffering irreparable harm."  (ECF No. 9 at ¶ 29).  More is required to survive a motion to dismiss.  *See Iqbal*, 556 U.S. at 678 (pleading requirements demand more than "an unadorned, the-defendant-unlawfully-harmed-me accusation.").  Defendants do not allege how Top Tracking's assets have been wasted, which assets have been wasted, or any facts that support that Figueredo is engaged in a misappropriation scheme.  That Figueredo, the person alleged in the Counterclaim to be the sole manager of Top Tracking, has control over the new bank account does not permit this Court to reasonably infer that Figueredo has misappropriated company assets.

Accordingly, the undersigned recommends that Defendants' claim for dissolution on the grounds of waste or misappropriation of assets be dismissed, without prejudice.[1]

---

[1] For the same reasons, the undersigned recommends that Counter-Plaintiffs' Motion for Appointment of Receiver and Temporary Restraining Order (ECF No. 90) be **DENIED**. The Motion incorporates the facts alleged in its verified complaint (in the now consolidated matter) and this counterclaim, and without any additional facts or evidence, argues Counter-Plaintiffs' likelihood of success on the merits. (ECF No. 90 at 1, 4). If permitted leave to amend the Counterclaim, Counter-Plaintiffs may similarly be afforded leave to renew (not merely refile) their motion to appoint a receiver.

### B.     Dissolution on the Grounds of Deadlock

A court may dissolve a limited liability company in a proceeding by a manager or member of the company if it is established that "[t]he managers or the members of the limited liability company are deadlocked in the management of the limited liability company's activities and affairs, the members are unable to break the deadlock, and irreparable injury to the limited liability company is threatened or being suffered." Fla. Stat. § 605.0702(1)(b)(5).

Defendants allege that they and Figueredo are deadlocked in the management of Top Tracking's affairs and activities, that they are unable to break the deadlock, and that irreparable injury to Top Tracking is threatened or being suffered. (ECF No. 9 at ¶ 9). Defendants claim they have been locked out of Top Tracking's management. (*Id*. at ¶ 51). Defendants argue that deadlock exists because they have "no idea where the assets of [Top Tracking] are being spent, they are not being given documentation relating to the operation of [Top Tracking] and they have been essentially locked out of the operation of [Top Tracking] by Figueredo." (*Id*. at ¶ 52). Defendants assert that the actions of Figueredo, Rubinos, and Ravelo have inflicted severe detriment on Top Tracking. (*Id*. at ¶ 7).

Plaintiff argues that Defendants cannot plausibly allege deadlock in the management or membership of Top Tracking. (ECF No. 81 at 7). Plaintiff reasons that if Defendants have been locked out of Top Tracking's management, that necessarily implies that Figueredo is managing the company, and no deadlock exists. (*Id*.). Plaintiff asserts that litigation concerning Top Tracking's management does not equate to deadlock. (*Id*. at 6). "If the unsigned operating agreement is found to be enforceable, and Rubinos and Ravelo are determined to be 'inactive members' who could not vote or sign the written consent, then there is no deadlock because [Defendants] can outvote Figueredo. If the unsigned operating agreement is found to be unenforceable then there is no deadlock

8

because Figueredo, Rubinos and Ravelo have already outvoted the two [Defendants] by signing the written consent agreement." (*Id.* at 7).

The undersigned agrees. Defendants do not assert that Top Tracking cannot operate as a result of the deadlock. *See Keretsz*, 994 So. 2d at 475. And absent true deadlock, there is "no basis for judicial dissolution or appointment of a receiver." *Id.* Where the interests of a majority of the members of an LLC are aligned, there can be no deadlock justifying judicial dissolution. *See id*. ("Here there was no impasse; the majority interest holders voted, and Kertesz lost . . . . The members and LLC cannot be sued simply because they exercised their prerogative to change management . . . ."). If the written consent was valid, as executed by Figueredo, Ravelo, and Rubinos, with a collective ownership stake of 60 percent, then no deadlock exists. *See Wallace v. JEY Hosp. Grp., LLC*, No. 18-81593-CIV, 2019 WL 2269742, at *7 (S.D. Fla. Feb. 1, 2019) (finding that plaintiff and defendant each possessed a 50 percent ownership stake and thus, neither could defeat the deadlock), *report and recommendation adopted*, No. 9:18-CV-81593, 2019 WL 2267191 (S.D. Fla. Feb. 25, 2019). If the written consent was invalid, and Rubinos and Ravelo lacked the requisite voting rights to remove Castellanos and Herrera, then Defendants can outvote Figueredo, in which case there is no deadlock.

Defendants allege in their counterclaim that Castellanos and Herrera own 40 percent of Top Tracking. (ECF No. 9 at ¶¶ 2–3). Deadlock cannot exist between majority-minority ownership; it exists only when ownership is split fifty-fifty and the parties are unable to agree on how to manage the company. *See Kertesz*, 994 So. 2d at 475 ("The governance and operation of an LLC in the absence of other written terms is a simple matter of majority rule."); *Wallace*, 2019 WL 2269742, at *7. The facts alleged in the counterclaim foreclose their claim of deadlock in the management of Top Tracking. Accordingly, the undersigned recommends that Defendants' claim for dissolution on the basis of deadlock be dismissed with prejudice.

IV.     **RECOMMENDATIONS**

For the foregoing reasons, the undersigned **RECOMMENDS** that Counter-Defendant's Motion to Dismiss Counter-Plaintiffs' Verified Counterclaim (ECF No. 65) be **GRANTED.** The undersigned further recommends that Counter-plaintiffs be afforded leave to amend their Counterclaim for judicial dissolution predicated on misappropriation of assets. Consistent with this Report and Recommendations, the undersigned also **RECOMMENDS** that Counter-Plaintiffs' Motion for Appointment of Receiver and Temporary Restraining Order (ECF No. 90) be **DENIED.**

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Jacqueline E. Becerra, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) days** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020). Any response to objections must be filed within seven (7) days of the filed objections. *See* S.D. Fla. L.R. 4(b).

**RESPECTFULLY SUBMITTED** in Chambers, in Miami, Florida this 8th day of August, 2024.

                                                                             _____
                                                                             LAUREN F. LOUIS
                                                                             UNITED STATES MAGISTRATE JUDGE

cc:     Honorable Jacqueline E. Becerra
        All Counsel of Record