UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:23-CV-24891-JB

KVC ESTATES IV, LLC,
a Florida limited liability company,
and CARLOS A. HERRERA, an individual

    Plaintiffs,

v.

PEDRO FIGUEREDO LOPEZ, an
individual, ALEJANDRO RUBINOS, an
individual, and LUIS RAVELO, an individual

    Defendants.
_____/

## REPORT AND RECOMMENDATIONS

**THIS CAUSE** is before the Court upon Defendants' Motion to Dismiss Plaintiffs' Complaint. (ECF No. 80). Plaintiffs filed a Response (ECF No. 82), to which Defendants filed a Reply (ECF No. 96). This matter was referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, for a report and recommendation. (ECF No. 86). Having considered the Motion, Response, Reply, and being otherwise fully advised in the premises, the undersigned respectfully **RECOMMENDS** that the Motion be **GRANTED in part** and **DENIED in part** for the reasons stated below.

**I.**    **BACKGROUND**

This is an action pertaining to the trademark rights and use of the "TOP TRACKING" mark (the "Mark"). Plaintiffs KVC Estates IV, LLC ("KVC") and Carlos Herrera instituted this suit against Herrera's business partners, Pedro Figueredo Lopez, Alejandro Rubinos, and Luis

1

Ravelo—collectively, the Defendants—alleging numerous violations of state and federal law. (ECF No. 1).[1]

Herrera generally alleges that he created the brand "Top Tracking," in 2016, after years in the trucking industry. He claims to then have formed the company Top Tracking System, LLC, to which he licensed use of the mark for its business. He further alleges that, as the sole officer of the company with experience in the trucking business, the company's client base was formed from his personal connections and relationships; as a result, he alleges, the "public's association with the 'Top Tracking' brand is inextricably intertwined with his personal identity, reputation, and expertise." (ECF No. 1 at ¶ 14). Accordingly, he claims to be the sole owner of the TOP TRACKING mark, in his individual capacity (as opposed to in his capacity as an officer of Top Tracking Systems).

Herrera similarly alleges that he "has continuously used the 'TOP TRACKING' Mark in connection with business consulting services" in the relevant field of vehicle tracking, throughout the United States. (*Id.* at ¶ 17). The Complaint alleges that Plaintiffs have marketed goods and services under the TOP TRACKING mark, which has acquired substantial goodwill and recognition by the public as a symbol of and assurance of the quality of Plaintiffs' goods and services. (*Id.* at ¶¶ 17–21).

In November of 2023, the members of Top Tracking System had a falling out and change in control, which led to this suit and the related suit filed by Top Tracking System against Herrera. Top Tracking System, which is not a party hereto, is owned by five individuals in equal shares: Herrera and Maria Castellanos (who is also not a named party) each own twenty percent, as do

---

[1] The subject Complaint was filed in the related matter pending in this District, Case No. 1:24-cv-20012 (the "2024 Case"). The cases have since been consolidated into the present matter. For clarity of the record, citations to the Complaint and its exhibits at (ECF No. 1) refer to docket entry no. 1 of the 2024 Case's docket. All other citations to docket entries herein correspond to the docket for the present matter.

each of the three named Defendants, Figueredo, Rubinos, and Ravelo. (*Id.* at ¶ 22). The Complaint alleges that on November 1, 2023, the Defendants executed a "sham" consent agreement purporting to remove Herrera and Castellanos as managers, naming Figueredo as the company's sole manager. (*Id.* at ¶ 25). The Complaint alleges a variety of facts to show that neither Rubinos nor Ravelo in fact had voting power at the time the consent agreement was executed, which facts were known to Figueredo; yet under his new authority, it is alleged that he terminated Castellanos and Herrera's employment with Top Tracking System and wrested control of the company from them. *See* (*id.* at ¶ 31).

Herrera alleges here that Top Tracking System's authority to use the TOP TRACKING Mark ended in November of 2023, when he assigned the rights to the Mark to a newly formed holding company, Plaintiff KVC Estates IV LLC. KVC filed a trademark application with the United States Patent & Trademark Office in November of 2023 to register "TOP TRACKING SYSTEM." (ECF No. 1-2).

Yet, the Complaint alleges that Defendants have continued to use the TOP TRACKING mark. For example, it is alleged that the Defendants registered an infringing domain, "TOPTRACKING.COM," created a website that replicates "the content of Plaintiff's[2] official website," and created copies of the company's social media accounts. (ECF No. 1 at ¶ 33). Plaintiffs claim that these actions have "misled consumers into believing that the infringing website and accounts are affiliated with or endorsed by Plaintiffs." (*Id.* at ¶ 34). The Complaint claims that Defendants used the "infringing domain" to redirect customer activity, leading to a

---

[2] This is one of several confusing uses of the term "plaintiff" or "plaintiffs" in the Complaint, which fails to meaningfully appreciate the separateness of Herrera individually from either Top Tracking System or his newly formed entity KVC. In this example, it appears that the allegedly infringing website mimics the content of *Top Tracking System*'s website, as the Complaint does not allege that either KVC or Herrera maintain an official website or social media accounts.

disruption in services to customers, and confusion and concerns about the "legitimacy and security of the Plaintiffs' goods/services." (*Id.* at ¶ 37).

On November 22, 2023, Plaintiffs and Castellanos sent a cease-and-desist letter to Defendants, claiming that KVC owns the trademark rights in TOP TRACKING SYSTEM and demanding that Defendants cease use of the mark "in connection with the business" they stole from Herrera and Castellanos—that is, Top Tracking Systems. (ECF No. 1-8). Such use of the mark has created confusion among consumers, diverted customers away from Plaintiffs, created a false association between the infringing website and Plaintiffs' goods and services, and caused irreparable financial and reputational harm to Plaintiffs. (ECF No. 1 at ¶¶ 42–43). Because Defendants have not ceased their use of the mark, Plaintiffs initiated the present suit for damages and injunctive relief.

Plaintiffs assert claims for Trademark Infringement (Count 1) and Unfair Competition (Count 2) under the Lanham Act, 15 U.S.C. § 1125(a) *et seq.*; violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.204 *et seq.* (Count 3); Unfair Competition (Count 4) and Trademark Infringement (Count 5) under Florida common law; and Violation of Anticybersquatting Consumer Protection Act ("ACPA") (Count 6). *See generally* (ECF No. 1). Among other things, Plaintiffs seek to enjoin Defendants' use of the Mark and damages resulting from its use. (*Id.* at 16–18). Defendants now move to dismiss the Complaint. (ECF No. 80).

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct," though no specific technical form is required. Fed. R. Civ. P. 8(d)(1).

4

Federal Rule of Civil Procedure 10(b) provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). A shotgun pleading is one that fails to satisfy these rules.

The Eleventh Circuit has recognized several categories of impermissible shotgun pleadings. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015). The rarest commits the "sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* "When faced with a shotgun pleading, a district court must order a litigant to replead for a more definite statement of the claim." *Luft v. Citigroup Glob. Mkts. Realty Corp.*, 620 F. App'x 702, 704 (11th Cir. 2015).

Failure to state a claim upon which relief can be granted also warrants dismissal. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Though detailed factual allegations need not be provided, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The allegations must "raise a right to relief above the speculative level." *Id.* Facts alleged are to be taken as true and all

reasonable inferences are to be drawn in claimant's favor. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012).

In deciding a motion to dismiss, "[a] court may consider only the complaint itself and any documents referred to in the complaint which are central to the claims." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). "[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

### III.   DISCUSSION

Defendants move to dismiss the Complaint on the basis that it is a "shotgun" pleading that deprives Defendants of meaningful notice of which Defendant is alleged to have committed what acts. Specifically, Defendants attack Plaintiffs' FDUTPA claim for failing to allege with sufficient specificity each Defendant's participation in and knowledge of the alleged misconduct. Similarly, Defendants contend that Plaintiffs' cybersquatting claim fails to identify which Defendant created the allegedly infringing website. Finally, Defendants contend that Plaintiffs cannot state a claim for relief for trademark infringement or unfair competition because they have not, and cannot, plead facts showing Plaintiffs' prior use of the trademark on which all of their claims are premised.

#### A.   Plaintiffs' Complaint Is an Impermissible Shotgun Pleading

Defendants contend that the Complaint is an impermissible shotgun pleading and fails to provide each individual Defendant with notice of the factual basis for each of the claims against him. (ECF No. 80 at 5). As such, each Defendant is unable to prepare his defense. (*Id.* at 5–6). Plaintiffs argue that Defendants were collectively involved in the unlawful activities, that the

6

allegations raise the same claims and relate to the same occurrences, and that, under the circumstances, naming each Defendant in every Count is proper. (ECF No. 82 at 2–4).

The mere fact that Defendants are "accused collectively does not render the complaint deficient." *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000). So long as the complaint can be fairly read to allege that all defendants are responsible for the misconduct alleged, the complaint is proper. *See id.* Plaintiffs rely on *1-800-411-I.P. Holdings, LLC v. Georgia Injury Centers, LLC*, 71 F. Supp. 3d 1325 (S.D. Fla. 2014), for the proposition that a complaint alleging multiple defendants participated in the conduct at issue provides Defendants fair notice of the claims against them. (ECF No. 82 at 3). Defendants take issue with Plaintiffs' characterization of *1-800-411-I.P. Holdings, LLC*, arguing that, there, the multiple entities were alleged to have collaborated in the wrongdoings. (ECF No. 96 at 2). The undersigned agrees that *1-800-411-I.P. Holdings, LLC* is distinguishable from the case at bar. The court in *1-800-411-I.P. Holdings, LLC* relied on the circumstances set out in that particular complaint: that the individual defendants, acting through the defendant corporations, collaborated to commit the alleged tort. *See 1-800-411-I.P. Holdings, LLC*, 71 F. Supp. 1325 at 1330. Here, Plaintiffs make no such allegations.

Rather, Plaintiffs' allegations are irreconcilable with the theory that the Defendants acted collectively. For instance, Plaintiffs aver that Defendant Figueredo is Top Tracking System's sole manager. (ECF No. 1 at ¶¶ 25, 32). If, as Plaintiffs contend, Defendants Rubinos and Ravelo are non-voting, inactive members, they lack authority to manage the day-to-day affairs of Top Tracking System. (*Id.* at ¶ 25). Taking Plaintiffs' allegations as true—as the Court must—they do not support Plaintiffs' current position that the Defendants collaborated or acted collectively with respect to Top Tracking System's business activities, and no facts beyond their roles as members of Top Tracking System are alleged in the Complaint.

However, Plaintiffs' claim for violation of the ACPA is not deficient for failure to plead which of the three Defendants actually registered the allegedly infringing domain. In their Motion, Defendants rely on *Synergy Real Estate of SW Florida, Inc. v. Premier Property Management of SW Florida*, LLC, 578 F. App'x 959 (11th Cir. 2014), where the Eleventh Circuit affirmed dismissal of an ACPA claim that had failed to plead that any of the defendants registered the domain name or were the authorized licensee; in fact, the court noted that the *plaintiff* itself was the domain name registrant—thus defeating any plausible claim that any defendant had registered it. *Id.* at 961. *Synergy* offers no support for Defendants' argument here that a cognizable ACPA claim requires allegations identifying which individual defendant registered the domain. Drawing all reasonable inferences in favor of Plaintiffs, the allegations are sufficient to plead that collectively, Defendants caused the domain's registration, knowing that it was confusingly similar to Herrera's TOP TRACKING Mark.

Accordingly, the undersigned recommends that Counts 1 through 5 of Plaintiffs' Complaint be dismissed, with leave to amend, and that Plaintiffs be instructed to particularly allege the unlawful actions of each Defendant that provide the basis for each Count. *See Luft*, 620 F. App'x at 704. Because leave to amend is recommended, the Court further analyzes the deficiencies raised in Defendants' motion, to avoid repetition of similar deficiencies in an amended complaint. *See Fox v. Loews Corp.*, 309 F. Supp. 3d 1241, 1245 (S.D. Fla. 2018).

**B.     Lanham Act and Related State Law Claims**

Plaintiffs allege that Defendants have engaged in unfair competition and trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1125(a) (ECF No. 1 at 11–12). Plaintiffs aver that, from the Mark's inception in 2016 to November 2023, Herrera was the sole owner of the common law rights and goodwill associated with the TOP TRACKING mark. (*Id.* at ¶ 13). Herrera

allegedly authorized Top Tracking System to use the Mark until he transferred ownership of TOP TRACKING to KVC on November 2, 2023. (*Id.* at ¶¶ 15–16). Herrera has continuously used the TOP TRACKING mark in connection with business consulting services since at least as early as 2016. (*Id.* at ¶ 17). The mark has acquired substantial goodwill and recognition and is relied upon and recognized by the public as a symbol and assurance of the quality of Plaintiffs' goods and services. (*Id.* at ¶ 19). Plaintiffs allege that Defendants registered the domain name <TOPTRACKING.COM> without consent or authorization, and that this has misled consumers into falsely believing that the website and social media accounts are affiliated with Plaintiffs. (*Id.* at ¶¶ 33–34).

Plaintiffs claim that they terminated Top Tracking System's authority to use the TOP TRACKING mark via a cease-and-desist letter demanding that Defendants discontinue their use. (*Id.* at ¶ 41). Plaintiffs allege that Defendants' actions have undermined the company's valuable relationships with its customers, and that the deceptive actions will result in future diverted sales, damages, and irreparable harm to Plaintiffs' reputation and goodwill. (*Id.* at ¶ 43).

"To establish a prima facie case under § 1125(a), a plaintiff must show (1) that the plaintiff had enforceable trademark rights in the mark or name, and (2) that the defendant made unauthorized use of it 'such that consumers were likely to confuse the two.'" *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007) (quoting *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 358 (11th Cir.1997)).  Under the Lanham Act, Plaintiffs must plead (1) that Defendants used the name TOP TRACKING, (2) in interstate commerce, (3) in connection with goods and services, (4) that the name is likely to cause confusion, mistake, or deception as to the association of the Defendants with another person or as to the origin of Defendants' goods, services, or commercial activities, and (5) that Plaintiffs have

been or are likely to be harmed. *See* 15 U.S.C. §1125(a)(1)(A); *see also* J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 27:13 (5th ed. 2024).

In their Motion to Dismiss, Defendants challenge Plaintiffs' ability to allege ownership rights in the Mark. In the case of an unregistered mark, ownership rights are "appropriated only through actual prior use in commerce." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (quoting *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1022 (11th Cir. 1989)). "In the absence of registration, rights to a mark traditionally have depended on the very same elements that are now included in the statutory definition: the bona fide use of a mark in commerce." *Id.* at 1193 n.5 (quoting *Allard Enters., Inc. v. Advanced Programming Res., Inc.*, 146 F.3d 350, 357 (6th Cir. 1998)). "[T]he use of a mark in commerce also must be sufficient to establish *ownership rights* for a plaintiff to recover against subsequent users under section 43(a)." *Id.* at 1195 (emphasis in original). Plaintiffs' Florida common law and FDUTPA claims similarly rise or fall with Plaintiffs' ability to plausibly allege ownership rights over the Mark. *See Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1345 (11th Cir. 2012) (affirming the district court's conclusion that the legal analysis was the same for violations of the Lanham Act, FDUTPA and Florida state common law for infringement and unfair competition); *see Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C.*, 931 F.2d 1519, 1521 (11th Cir. 1991) (reasoning that if the plaintiff's federal service mark claim fails, then so too do plaintiff's statutory and common law claims of trademark infringement and unfair competition); *Coach, Inc v. Swap Shop, Inc.*, 916 F. Supp. 2d 1271, 1283 (S.D. Fla. 2012) ("FDUTPA claim 'rises or falls' on the success of its infringement claims.").

"The first to use a mark on a product or service in a particular geographic market acquires rights in the mark in that market." *Popular Bank of Fla. v. Banco Popular de P.R.*, 9 F. Supp. 2d

1347, 1353 (S.D. Fla. 1998). The Eleventh Circuit has devised a two-part test for determining whether a party has proven "prior use" of a mark sufficient to establish ownership: (1) evidence showing adoption, and (2) evidence showing "use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." *GLD, LLC v. Gold Presidents, LLC*, No. 20-21617-CIV, 2021 WL 148737, at *3 (S.D. Fla. Jan. 15, 2021) (citing *Crystal Ent. & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1321 (11th Cir. 2011)).

Defendants argue that Plaintiffs have not, and cannot, claim prior use of the Mark independent of non-party Top Tracking System's use. Specifically, Defendants contend Plaintiff Herrera cannot prove ownership in the Mark because there is no allegation of his use <u>before</u> its use by Top Tracking System. (ECF No. 80 at 8). Plaintiffs respond that Top Tracking System was authorized to use the Mark pursuant to an implied license and that, from his position as Top Tracking System's manager, Herrera was able to exercise reasonable control over Top Tracking System's use of the Mark. Plaintiffs further argue that Herrera's conduct was consistent with that of a licensor, including his termination of the implied license upon Defendants' removal of him from a managerial position at Top Tracking System. On Reply, Defendants do not meaningfully dispute the legal arguments that Plaintiffs advance to support their assertion that they have priority to the Mark and Top Tracking System was merely a licensee; rather, Defendants argue that the Response goes beyond the four corners of the Complaint to advance this argument, and that, regardless, it is demonstrably false that Top Tracking System merely had a license from Herrera. (ECF No. 96 at 3).

Defendants' insistence that Herrera must plead and prove use of the Mark that predates Top Tracking System's use is not supported with citation to case law.[3] To state viable trademark claims, Plaintiffs must allege that they used the Mark in the relevant market before *Defendants* actually used the name. *Domond v. Peoplenetwork APS*, No. 16-24026-CIV, 2017 WL 5642450, at *4 (S.D. Fla. June 16, 2017), *aff'd*, 748 F. App'x 261 (11th Cir. 2018). Defendants rely on *Domond* to support their argument that Herrera's failure to allege that he personally used the Mark before Top Tracking System did defeats his claims *against the Defendants*. It does not. Plaintiffs accuse Defendants of unauthorized use of the Mark in 2023. The Complaint alleges that Herrera used the Mark since 2016 by licensing it to Top Tracking System and exercising reasonable control over the goods and services associated with the Mark. As between Plaintiffs and Defendants, Plaintiffs' prior use is alleged in the Complaint.

Alternatively, Defendants' insistence that Top Tracking System, not Herrera individually, established priority in the Mark by first use in commerce, (ECF No. 80 at 11), interjects a factual dispute that challenges Herrera's sworn allegation of having used the Mark first. Taking the allegations as true, as we must at this stage, Plaintiffs have alleged that Top Tracking System was authorized to use the Mark—despite Defendants' denial on Reply that the Complaint alleges any facts to support Plaintiffs' argument that Top Tracking had an implied license to the use of the Mark.

Finally, Defendants argue that the Operating Agreement attached as an exhibit to the Complaint proves that Top Tracking System was required to use the name unless the members agreed to change its name. This potential defense to liability is more appropriately addressed at summary judgment; it is not a basis for dismissal of the claims at this stage.

---

[3] (ECF No. 80 at 10–11).

For the foregoing reasons, I respectfully recommend that Defendants' Motion to Dismiss Counts 1 through 4 for failure to state a claim be denied.

### C. Anti-Cybersquatting Claim

The Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1)(A), provides that a person shall be liable in a civil action by the owner of a mark if that person has a bad faith intent to profit from that mark and registers, traffics in, or uses a domain name that is identical or confusingly similar to that mark. *See* 15 U.S.C. § 1125(d)(1)(A); *Jysk Bed'N Linen v. Dutta-Roy*, 810 F.3d 767, 770–71 (11th Cir. 2015). A claim for cybersquatting requires Plaintiffs to allege "(1) that its trademark was distinctive when the defendant registered the challenged domain name; (2) that the domain name is identical or confusingly similar to the plaintiff's trademark; and (3) that the defendant registered the domain name with a bad-faith intent to profit." *Boigris v. EWC P&T, LLC*, 7 F.4th 1079, 1085 (11th Cir. 2021). "Proving 'bad faith' is not enough. A defendant is liable only where a plaintiff can establish that the defendant had a 'bad faith *intent to profit*.'" *S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1246 (11th Cir. 2009) (emphasis in original).

Bad faith can be evidenced by the registration of "well-known marks to prey on consumer confusion by misusing the domain name to divert customers from the mark owner's site to the cybersquatter's own site." *Id.* (quoting *Lucas Nursery & Landscaping v. Grosse*, 359 F.3d 806, 810 (6th Cir.2004)). "A defendant could also intend to profit by diverting customers from the website of the trademark owner to the defendant's own website, where those consumers would purchase the defendant's products or services instead of the trademark owner's." *Id.* at 1247 (quoting *Utah Lighthouse Ministry v. Found. for Apologetic Info. and Rsch.*, 527 F.3d 1045, 1058 (10th Cir. 2008)).

13

Plaintiffs have adequately alleged Defendants' bad faith intent to profit. Plaintiffs allege that Defendants registered the domain name <TOPTRACKING.COM> and proceeded to replicate the contents of Plaintiffs' website and create unauthorized copies of the company's social media accounts. (ECF No. 1 at ¶ 33). Defendants also attempted to link the electronic logging devices used by Plaintiffs' customers via Plaintiffs' website to Defendants' new website. (*Id.* at ¶ 37). Defendants then used <TOPTRACKING.COM> to promote competing goods and services with the intent of diverting Plaintiffs' customers to its website for commercial gain. (*Id.* at ¶63). Plaintiffs have alleged that Defendants attempted to divert customers, and that is sufficient to survive a motion to dismiss. *Cf. Potolicchio v. Cryo Boys, LLC*, No. 23-60754-CIV, 2024 WL 3511353, at *3 (S.D. Fla. Jan. 8, 2024) ("Paragraph 33, however, does not make any reference to Defendants' intent to divert consumers. It therefore cannot support Potolicchio's claim that factor V has been adequately pled."); *see also S. Grouts & Mortars, Inc.*, 575 F.3d at 1246. Accordingly, dismissal of Count 6 is not warranted for failure to state a claim.

D.   **FDUTPA Claim**

FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). "To state a claim for injunctive relief under FDUTPA, a plaintiff must allege: (1) 'a deceptive [or unfair] act or practice in trade'; and (2) 'the [p]laintiff is a person "aggrieved" by the deceptive act or practice.'" *CMR Constr. & Roofing, LLC v. UCMS, LLC*, No. 21-11183, 2022 WL 3012298, at *3 (11th Cir. 2022) (quoting *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cnty., Inc.*, 159 So. 3d 164, 167 (Fla. 4th DCA 2015)). "And to state a claim for damages under FDUTPA, a plaintiff must allege: '(1) a deceptive act or unfair practice; (2)

14

causation; and (3) actual damages.'" *Id.* (quoting *Carriuolo v. General Motors Co.*, 823 F.3d 977, 983 (11th Cir. 2016)). Plaintiffs seek both injunctive relief and damages. (ECF No. 1 at 16–18).

"[I]t has long been the law in Florida that in order to proceed against an individual using a FDUTPA violation theory an aggrieved party must allege that the individual was a direct participant in the improper dealings." *KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1074 (Fla. 5th DCA 2008); *see Aboujaoude v. Poinciana Dev. Co. II*, 509 F. Supp. 2d 1266, 1277 (S.D. Fla. 2007). "Once the liability of an entity for a violation of FDUTPA is established, a plaintiff can establish the liability of an individual defendant who (1) participated in the deceptive acts or unfair practices that gave rise to the entity's liability or had control over those actions and (2) had knowledge of those acts or practices." *Bluegreen Vacations Unlimited, Inc. v. Timeshare Termination Team, LLC*, No. 20-CV-25318, 2023 WL 4105529, at *8 (S.D. Fla. June 21, 2023).

Defendants argue that because Plaintiffs have failed to particularly allege the acts of the individual Defendants that constitute a FDUTPA violation, the Complaint is due to be dismissed. (ECF No. 80 at 13). Defendants argue that because Plaintiffs have not sufficiently alleged which actions of Top Tracking System—the entity—constitute a violation of FDUTPA, and because Plaintiffs have likewise failed to do so with respect to the individual Defendants, the FDUTPA claim fails. (*Id.* at 13–14). And Defendants seem to contend that establishing the liability of Top Tracking System is a pre-requisite to establishing the liability of the individual Defendants. (ECF No. 80 at 13). Plaintiffs aver that the Complaint sufficiently alleges each individual Defendant's participation in the FDUTPA violation. (ECF No. 82 at 9).

"Piercing the corporate veil is not necessary to hold an individual officer liable under FDUTPA; however, the aggrieved party must show that the individual was a direct participant in the improper dealings." *N. Am. Clearing, Inc. v. Brokerage Comput. Sys, Inc.*, 666 F. Supp. 2d

15

1299, 1311 (M.D. Fla. 2009) (internal quotations omitted). And it is well-settled that if "a director or officer commits or participates in the commission of a tort, whether or not it is also by or for the corporation, he is liable to third persons injured thereby, and it does not matter what liability attaches to the corporation for the tort." *Home Loan Corp. v. Aza*, 930 So. 2d 814, 815 (Fla. 3d DCA 2006) (quoting *Orlovsky v. Solid Surf, Inc.*, 405 So. 2d 1363, 1364 (Fla. 4th DCA 1981)). These principles have been applied to limited liability companies and their managers. *See TemPay, Inc. v. Biltres Staffing of Tampa Bay, LLC*, 945 F. Supp. 2d 1331, 1346 (M.D. Fla. 2013). As such, Plaintiffs need not establish Top Tracking System's liability, provided that they particularly allege each Defendant's participation in the allegedly deceptive acts.

They have not done so. Plaintiffs' Response relies on *Aboujaoude v. Poinciana Development Co. II* for the proposition that a director or officer may be liable to third parties injured by his tortious conduct, "whether or not it is also by or for the corporation." 509 F. Supp. 2d 1266, 1277 (S.D. Fla. 2007). But after reciting this uncontroverted statement of law, the court went on to find that the complaint failed to state a claim for FDUTPA:

> The Aboujaoudes have made general allegations against Reardon, but they do not specify his individual actions and how they constitute a violation of FDUTPA. Thus, the Aboujaoudes claim against Reardon under Count IV is dismissed without prejudice. In their Amended Complaint, the Aboujaoudes must allege Reardon's direct involvement in any dealings that may constitute a violation of FDUTPA.

*Id.* Plaintiffs' reliance on *F.T.C. v. Student Aid Center, Inc.* is similarly misplaced; in finding that the plaintiffs' FDUTPA claims were sufficiently pled, the court noted that the complaint identified "which of the defendants' statements were at issue for the specific violations." 281 F. Supp. 3d 1324, 1333 (S.D. Fla. 2016). The same is not true of the facts supporting Plaintiffs' FDUTPA claim in the Verified Complaint. As to Rubinos and Ravelo, the only allegations identifying them by

16

name pertain to the execution of the written consent and their involvement in the 2019 state-court action. *See* (ECF No. 1 at ¶¶ 24, 25, 26, 27, 28, 29, 30).

Plaintiffs have made general allegations as to all Defendants, "but they do not specify [any] individual actions and how they constitute a violation of FDUTPA." *Aboujaoude*, 509 F. Supp. 2d at 1277. While Defendants may in fact all be liable for the wrongful acts constituting the alleged FDUTPA violation, allegations of individual wrongdoing are absent in the present Complaint. Plaintiffs must allege how each Defendant "was a direct participant in the improper dealings." *KC Leisure, Inc.*, 972 So. 2d at 1074.

Moreover, Plaintiffs' Complaint is inconsistent with respect to which of the individual Defendants could have plausibly participated in the FDUTPA violation. Plaintiffs aver that Defendants Rubinos and Ravelo are inactive members of Top Tracking System and therefore not entitled to voting rights. (ECF No. 1 at ¶ 24). Plaintiffs aver that Defendant Figueredo was appointed as Top Tracking System's sole manager in 2023. (*Id.* at ¶ 25). Given Plaintiffs' allegations that Defendant Figueredo is the sole manager of Top Tracking System and Defendants Rubinos and Ravelo lack any management authority over the company's activities, the Complaint fails to plausibly allege that they directly participated in the improper dealings.

In sum, Plaintiffs have not met their burden to plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. If Plaintiffs re-plead the FDUTPA claims against all three Defendants, they must particularly allege the participation of each individual Defendant in that violation.

## IV.     RECOMMENDATIONS

For the foregoing reasons, the undersigned **RECOMMENDS** that Defendants' Motion (ECF No. 80) be **GRANTED in part** and **DENIED in part,** and that Plaintiffs' Complaint be **DISMISSED, without prejudice.** A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Jacqueline E. Becerra, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) days** of being served with a copy of this Report and Recommendation. Response thereto, if any, must be filed within **SEVEN (7)** days of service of Objections. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers, in Miami, Florida this 13th day of February, 2025.

_____
LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE